UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TOMI LLC, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | )    2:25-cv-00081-SDN |
| | ) |
| BREAKWATER DESIGN & BUILD INC. et al., | ) |
| | ) |
|     Defendants | ) |

**ORDER ON MOTION FOR ATTACHMENT
AND ATTACHMENT ON TRUSTEE PROCESS**

The matter is before the Court on Plaintiff's Motion for Attachment and Attachment on Trustee Process. (Motion, ECF No. 3.) Through the motion, Plaintiff asks the Court to approve an attachment and an attachment on trustee process in the amount of $572,975 on the property of Defendant Breakwater Design & Build Inc. (Breakwater).[1] Defendants oppose the motion. (Response, ECF No. 11.)

After consideration of the parties' arguments and following a review of the record, the Court denies Plaintiff's motion.

---

[1] Ginny Savage and Mike Jones are also named as defendants. Plaintiff does not seek an attachment against their property.

## FACTUAL BACKGROUND[2]

In May 2022, Plaintiff and Breakwater entered a contract for the renovation of Plaintiff's house.[3] (Declaration of Thomas D. Fina ¶ 8, ECF No. 3-1 (hereinafter "Fina 1"); Declaration of Ginny Savage ¶ 7, ECF No. 11-1.) The contract for the project lists "allowances" for various aspects of the project, including labor and materials. (*See* Exhibit A, ECF No. 1-1.) The contract states that the monetary amount of the "total allowances" for the project is $749,300.[4] (Exhibit A at 10.)

Defendant contends the contract was a time and materials contract and charged Plaintiff a 20% surcharge on materials and subcontractor work. (Savage ¶¶ 8–9.) Plaintiff asserts Defendant informed Plaintiff that the cost of the renovation "[m]ight be less, shouldn't be more" than $749,300. (Fina 2 ¶ 1(c)). Breakwater maintains that at the start of the project, Breakwater discussed with Plaintiff the surcharge that would be added to the materials and subcontractor charges. (Savage ¶ 9.) The surcharge is not included in

---

[2] The factual background is derived from the complaint, and the affidavits and exhibits submitted by the parties regarding the motion for attachment. In support of its motion, Plaintiff submitted affidavits by Thomas D. Fina, a 50% owner/member of TOMI, LLC, Robert L. Fulmer, the owner of Fulmer Associates, and Cameron Rubenstein, the founder and owner of Diversified Builders, Inc. Breakwater submitted affidavits from Ginny Savage, a project manager at Breakwater, and Mike Jones, Breakwater's founder and owner.

[3] Prior to this contract, in September 2021, Plaintiff contracted with Breakwater to design a renovation of Plaintiff's house in Owl's Head, Maine. (Fina 1 ¶ 6; Savage ¶ 4.) Throughout the design process, Plaintiff made several changes to reduce the cost of the renovation. (Declaration of Thomas D. Fina ¶ 1(a), ECF No. 13-1 (hereinafter "Fina 2").) In late 2021, Plaintiff and Breakwater also contracted for Breakwater to perform basement remediation work. (Fina 1 ¶ 7; Savage ¶ 5.) Due to flooding, however, Plaintiff and Breakwater changed plans. (Fina 1 ¶ 7; Savage ¶ 5.) The basement remediation contract does not appear to be relevant to the current dispute.

[4] Plaintiff contends the contract price for the project is $742,300, and the incorrect amount listed in the contract is due to a miscalculation. (Complaint ¶ 14; Fina 1 ¶ 9. *But see* Fina 2 ¶ 1(c) (stating contract price was $749,300).)

the written contract.  (*See generally* Exhibit A; Fina 1 ¶ 16(a).)  Plaintiff requested that rather than impose a surcharge, Breakwater charge $50 per hour for the supervisory time of Defendants Jones and Savage.  (Fina 1 ¶ 16(a); Savage ¶ 9.)  Plaintiff contends that Breakwater "would not do it, and [Plaintiff] had no choice but to pay the [surcharges] that were not being billed in accordance with the original contract." (Fina 1 ¶ 16(a).)  Breakwater asserts that it did charge for supervisory time as requested until Plaintiff changed its mind and told Breakwater to use the surcharge approach.  (Savage ¶ 9.)

The contract did not include a specific completion date but provided for a $10,000 bonus if the work was completed by June 15, 2023.  (Exhibit A at 10; Fina 1 ¶ 11.)  Plaintiff maintains that before the contract was signed, Breakwater informed Plaintiff the renovation would take "about a year" and construction would be complete by the summer of 2023.  (Fina 1 ¶ 11.)

At some point after the contract was signed, Plaintiff and Breakwater agreed to revise the scope of the work.  (Fina 1 ¶ 10.)  The modifications increased the contract price to $765,972.  (*Id.*)  Plaintiff asserts that Breakwater also required Plaintiff to agree to change orders for work already within the scope of the original contract, increasing the contract price cost to $822,266.  (*Id.*)  Plaintiff objected to the additional change orders.  (*Id.*)

Throughout the renovation, Breakwater and Plaintiff met regularly by videoconference to discuss the status of the project.  (*See* Savage ¶ 12.)  Plaintiff asserts that during the conferences, it expressed its concern about the cost of the renovation but Breakwater repeatedly assured Plaintiff that the project was on budget.  (Fina 2 ¶ 1(f).)

Plaintiff contends that eight months into the project, Breakwater informed Plaintiff that the project was over on the labor budget. (*Id.*) The contract included a labor allowance of $180,000 (Exhibit A at 10); the total amount Breakwater ultimately charged Plaintiff for labor was $396,420. (Savage ¶ 13.) Breakwater maintains that the increased labor costs were due to customer decisions and conditions beyond Breakwater's control. (*Id.*) Breakwater also contends that Plaintiff was aware "as the job progressed, of the fact that labor costs for the work requested were considerably outpacing the labor allowance." (*Id.* ¶ 14.)

According to Plaintiff, at this point in the renovation, the house "had been completely open to the weather for more than six months" which caused damage to the house. (Fina 2 ¶ 1(g).) After the house had a "mostly completed roof and working heat," in December 2023, Plaintiff terminated the relationship with Breakwater. (*Id.* ¶ 1(i).) Plaintiff claims that by this time, it had paid Breakwater $931,773.75, (Fina 1 ¶ 19); Breakwater states Plaintiff had paid $917,502.83. (Savage ¶ 16.)

Plaintiff claims that some of Breakwater's renovation work was substandard. (Complaint ¶ 36; Fina 1 ¶ 16(c).) In support of its contention, Plaintiff cites Breakwater's work related to the master bath shower, exterior columns, sliding glass door, wrap-around deck, exterior vent for the range hood, the casement windows, Azek exterior trim, heat pumps and AC, two-panel door to the basement, lack of siding on the back of the house, exterior electrical outlet, subflooring, front and back doors, vanity for powder room, and new walls on first and second floors. (Fina 1 ¶ 16(c).) Breakwater disputes Plaintiff's contentions and argues that any issues regarding the quality of the work are the result of

4

Plaintiff's termination of the parties' agreement before Breakwater could complete the necessary work or due to work performed by others after Breakwater's services were terminated. (*See* Jones ¶ 6(a)–(s).)

Plaintiff's complaint, filed on March 7, 2025, contains four counts: (I) breach of contract, (II) intentional misrepresentation, (III) negligent misrepresentation, and (IV) unfair trade practices. (Complaint ¶¶ 35–67.) Defendant filed a partial motion to dismiss, seeking to dismiss the unfair trade practices claim, which motion is pending before the Court. (Motion to Dismiss, ECF No. 9; Report and Recommended Decision on Motion to Dismiss, ECF No. 16 (recommending denial of motion).)

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 64 and District of Maine Local Rule 64, the Court applies Maine law when presented with a motion for attachment and attachment on trustee process. To obtain an attachment or an attachment on trustee process, a plaintiff must demonstrate "that it is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment." M.R. Civ. P. 4A(c), 4B(c). A motion for an attachment or an attachment on trustee process must be accompanied by an affidavit or affidavits setting forth "specific facts sufficient to warrant the required findings and shall be upon the affiant's own knowledge, information or belief; and so far as upon information and belief, shall state that the affiant believes this information to be true." M. R. Civ. P.

5

4A(i), 4B(c).  "A trial court entertaining a motion for attachment reviews and assigns weight to affidavit evidence in the same manner it does with other evidence," *Wilson v. DelPapa*, 634 A.2d 1252, 1254 (Me. 1993), but need not rectify all factual disputes or resolve complex legal issues in a summary proceeding. *Porrazzo v. Karofsky*, 1998 ME 182, ¶ 7, 714 A.2d 826, 828.

## DISCUSSION

Plaintiff moves for an attachment on Breakwater's property arguing that Plaintiff will more likely than not recover on its breach of contract and unfair trade practices claims. The Court is not persuaded that Plaintiff is more likely than not to recover on its breach of contract claim.  As the recitation of the facts reflects and as a review of the record reveals, the parties dispute, with reference to specific facts and opinions to support their respective positions, whether Breakwater performed the work in accordance with and otherwise complied with the parties' agreement.  Resolution of the claim will ultimately require credibility assessments of witnesses, and an assessment of the quality of the work performed, which assessments cannot be made based on the competing affidavits, photos, and other documents submitted by the parties. *See, e.g.*, *Dube Envtl., Inc. v. Peaks Renewables LLC*, No. 1:24-cv-00365-LEW, 2025 WL 551197, at *1–2 (D. Me. Feb. 19, 2025) (denying motion for attachment when there was "a reasonable dispute as to [the p]laintiff's performance . . ."); *Dalbo v. Clark*, No. 2:15-cv-249-JAW, 2015 WL 8664223, at *2 (D. Me. Dec. 11, 2015) (quoting *Eaton v. Hancock County*, Civ. No. 8-370-B-W, 2010 WL 4537751, at *1 (D. Me. Nov. 3, 2010) ("Maine trial courts are particularly unwilling to approve prejudgment attachments when the affidavits make clear that the

merits of the dispute can only be resolved by a credibility assessment.")). Given that many of the factual disputes and the differing professional opinions on the record require an assessment of the credibility of the witnesses who submitted affidavits, the Court cannot at this stage of the proceedings find that Plaintiff is more likely than not to recover on its breach of contract claim. *See Dalbo*, 2015 WL 8664223, at *2 (reasoning that summary attachment proceedings are generally not the proper place for the assessment of expert opinions).[5]

Plaintiff's unfair trade practices claim requires the resolution of some of the same factual disputes, including whether the parties agreed to certain change orders and whether Breakwater billed for its services in accordance with the parties' agreement. Further, while Plaintiff asserts that Breakwater violated the Home Construction Contracts Act (HCCA), which would constitute a prima facie violation of the Maine Unfair Trade Practices Act (MUTPA), 10 M.R.S. § 1490, the Court is not convinced that Plaintiff is more likely than

---

[5] By way of example, Plaintiff contends that Breakwater impermissibly and unreasonably charged more than double the amount of the estimated labor costs. Breakwater, through the declaration of Ginny Savage, explains in detail the bases for the labor costs and represents that one of Plaintiff's principals, Thomas Fina, was very much involved in discussions regarding the additional work that was needed on the project. Similarly, Mike Jones, a Breakwater principal, directly controverts, with specific examples and explanations, Plaintiff's claims that Breakwater's work was unworkmanlike. The fact that Plaintiff counters with competing affidavits and expert analysis further demonstrates that complex factual disputes requiring credibility assessments exist. *See Hancock Lumber Co. Inc. v. Carbary*, No. 1:11-cv-317-NT, 2012 WL 315645, at *2 (D. Me. Feb. 1, 2012) (discouraging the use of reply affidavits seeking to supplement or correct omissions in initial filings); *Parkinson v. Milan Indus., Inc.*, No. CIV. A. CV-01-300, 2001 WL 1708837, at *1 (Me. Super. Oct. 23, 2001) ("The plaintiffs' reply affidavits, in which the affiants state that they have reviewed the defendant's affidavits and disagree with many of the assertions, highlight the issues of fact to be resolved at trial" rather than a motion for attachment).

7

not to recover damages on the claim even if Plaintiff were to prove a violation of the HCCA. "To recover under the [M]UTPA, a party must demonstrate 'a loss of money or property as a result of a [MUTPA] violation.' Key inquiries into whether the homeowners have suffered a financial or tangible loss are whether the materials claimed to be furnished by the [opposing party] were in fact furnished and whether the prices were fair and reasonable. In other words, in order to recover under the [M]UTPA, [a claimant] must demonstrate that [the claimant] did not receive the value that should have been conferred." *Sweet v. Breivogel*, 2019 ME 18, ¶ 21, 201 A.3d 1215 (quoting *Parker v. Ayre*, 612 A.2d 1283, 1285 (Me. 1992)) (ruling in counterclaim-defendant's favor when counterclaim-plaintiff proved violations of HCCA and the MUTPA "but failed to identify any injury or demonstrate a substantial loss of money or property resulting from the violations."). Here, facts relevant to whether there is a related loss are disputed by competent evidence. Because of the factual disputes regarding the contract and work performed, the Court cannot conclude that Plaintiff more likely than not lost property or money due to an HCCA violation.

In sum, the record reflects multiple factual disputes regarding the terms of the parties' agreement as potentially modified repeatedly, whether the parties satisfied their contractual obligations, the quality of the work performed by Breakwater, whether any inadequacies were material to the agreement, and the extent, if any, of the loss that Plaintiff suffered as the result of Breakwater's alleged non-compliance with the parties' agreement and the HCCA. *See Lewiston Properties, LLC v. Combined Management, Inc.*, No. CV-24-07, 2024 WL 4495617, at *5 (Me. Super. Ct. Apr. 16, 2024) (the accuracy of plausibly

8

disputed financial calculations "are fact intensive questions not answerable" in summary attachment proceeding"); *Cent. Maine Builders LLC v. Sounier*, No. CV-2023-125, 2024 WL 3446050, at *2 (Me. Super. Jan. 16, 2024) ("The court also declines to make the series of factual determinations that would be necessary to determine liability and damages"); *Squires v. Fenderson*, No. CV-22-72, 2023 WL 4053890, at *1 (Me. Super. Ct. Feb. 08, 2023) ("complex factual disputes are ill suited for resolution in the context of an attachment motion").

Given the extent and nature of the factual disputes of record, Breakwater's arguments regarding the parties' agreement and the quality of the work are just as plausible as Plaintiff's contentions. *See Tinkham v. Perry*, No. 1:12-CV-00229-GZS, 2014 WL 102207, at *2 (D. Me. Jan. 9, 2014) ("There are just too many unanswered questions at this juncture for me to find that it is more likely than not that" plaintiff would recover more than the requested amount). Resolution of the disputes would require an evidentiary hearing where witnesses can give additional explanations and the credibility of the witnesses for each party could be evaluated. Because the factual disputes cannot be resolved in the summary attachment proceeding, Plaintiff is not entitled to a prejudgment attachment.

## CONCLUSION

Based on the foregoing analysis, the Court denies Plaintiff's motion for attachment and attachment on trustee process.

9

## **NOTICE**

     Any objections to the Order shall be filed in accordance with Federal Rule of Civil Procedure 72.

                                              /s/ John C. Nivison
                                              U.S. Magistrate Judge

Dated this 1st day of July, 2025.